Good afternoon. Illinois Appellate Court First District Court is now in session. The Fifth Division, the Honorable Justice Mathias DeLorde presiding. Case number 2-0-0223, Javier Robinson versus the Village of Saw, the Village of Saw Village. Good afternoon everyone. Welcome to the Illinois Appellate Court Fifth Division. We're going to ask the lawyers who are going to argue to introduce themselves and tell us who we represent, beginning with the plaintiff or appellant. Pat O'Connor for the appellant. All right, and who is going to be representing or arguing for various defendants? Judge, I'm in for Sawk Village and the two Sawk Village defendants, Timothy Lapp. All right, and you're going to be arguing, right? No, it was actually, I will be arguing some, but it was actually Pat O'Connor. I don't know if I see him here yet. Yes, I'm here. Patrick O'Connor for the Crete defendants. And then I take it you're going to be taking the lead? Correct, for the appellees. Mr. Lapp, do you want to reserve any appellee time at all? I'll leave it up to Mr. O'Connor to see how far he goes and if there's some left, I will take it. All right, we'll allot about 15 minutes per side. Obviously, we may extend that if we get a lot of questions. Mr. Kevin O'Connor, you may begin when ready. May it please the court. As you know, we're here on granting of summary judgment in the trial court, and I believe that the court erred in not applying the two-part analysis or the two-part test as it relates to whether somebody is in custody related to this particular case. The court focused on the fact that a reasonable person would not feel free to leave, and I believe that that's only one part of the analysis, which comes under Reese and comes under Townsend. So when we look at the actual definition of 4-106B, it actually talks about a prisoner is defined as, quote, held in custody. And I'm assuming that the word held in custody has some meaning, the word held, as opposed to just being in custody. And when we look at the Reese analysis and we look at Townsend, if you look at both, the court really sets forth the two-part test. The first part is, would a person, was your person, any reasonable person not feel free to leave? And that's really not a part of this case. I'm not arguing that part. Obviously, when you're being pulled over and people pull out guns, you're not feeling reasonably free to leave. The second part of the analysis, which was not done, is the more important part, which is your freedom of movement was directly controlled or limited. And actually, the court used that word directly controlled or limited. And that's really the focus that I want to get back on. So in the Reese court, when you look at the facts of that particular case, you got, they place the person in the back of the squad car, the person jumps over, starts the car. They were actually limited in their movement. The officers got their hands on the person, and then they jumped in and they take off. Even in Townsend, we have the same scenario. They pull over the vehicle, the driver and the passenger are both handcuffed. The person's in the back seat, he jumps over the seat. And the argument in the appellate court really focused a lot on was he touched, was he grabbed? And the court focused on the fact that they were trying to grab him and actually got their hands on him as he was getting, trying to get away. And the court found that in both of those scenarios, the freedom of movement was directly controlled or curtailed. And they were attempting to do that. So is there anything in the record that shows that the police officers who engaged in the chase knew that the suspect that they were chasing had an ankle monitor? They did not know that. And there was absolutely no evidence that they knew any of that in this case. In fact, the record was pretty clear that they didn't know that at the time. They just thought it was a stolen vehicle this entire time. Mr. O'Connor, would it have made a difference if they knew? In this particular case, I don't think so, because we still don't have the second part of that test with the direct curtailing of the limitation of movement. And if you look at the actual monitor, the description that we actually quoted in the record, it says, don't detain, hold somebody based on simply that they're on this particular monitor. It actually, it's written right in the document itself that says this is not a basis to detain or hold somebody. So it's not like this is a person who is a fugitive or something like that. It wasn't that particular kind of case. So when we get back to the analysis in this particular case, when Mr. Coffey, the difference we have between our case and the cases that are cited by the court, and the reason this is so important is, we're talking about immunities here. And when you talk about immunities, you're looking really the defense or the appellee in this case is looking to expand the immunities. And the immunities really should be strictly construed against the municipality to limit what immunities are. So when the court in Reese talked about the various context of trying to figure out what to use as a basis, they talked about Miranda, Speedy Trial, Black's Law Dictionary. They looked at those three aspects. All three of those aspects related to the rights of a prisoner or where the court tries to expand those rights as opposed to limit them. And the only thing different in Townsend that the court looked at is the court looked at the Fourth Amendment analysis. And part of the Fourth Amendment analysis that the court looked at was saying, hey, I'm going to look at whether or not in the Fourth Amendment context is the person defined as being under a seizure. The most interesting thing about that is, the court actually pointed out that we are not in Townsend. The quote was, we are not equating the term custody as using the Tort Immunity Act with seizure. However, we found that the Fourth Amendment jurisprudence finds further support. So even the Townsend court said, we're not trying to equate it. The most interesting part about that, though, is even if somebody, which the defense and the appellee is trying to advocate that you do equate it, we still wouldn't meet the test in this particular case. The most recent Supreme Court case, which I couldn't cite to because it just came down, I believe on March 25th from the U.S. Supreme Court, was the case of Torres versus Madrid. It's 19-292 as decided March 25th, 2021. And they talked about the Fourth Amendment in the seizure context. And they said there's two elements that it can happen by. One is by use of force, laying of hands with limitation of movement. And in that case, it was a shooting where they actually shot at a woman who was leaving and they actually injured her. And the state was arguing that she wasn't under a seizure. The court ultimately said, yes, she was because the bullet acted as curtailing of her movement, like an extension of your arm. The second they said it can happen to is by control. But the only way it can happen by control is a show of authority with submission. And that's probably the most important aspect. Nowhere in this case did Mr. Coffey, the bad person here, ever show a submit to authority. He never did. In the whole context, we were able to see the video. He did not submit to authority. And the second part of it is they never met the test that directly curtailing his freedom of movement. So when we talk about what happened is they came at him from the one side. All he did, and he voluntarily pulled his car over. But he didn't do it as a result of the police being behind him. He had already lost them by the police officer said, if he would have kept going, I would have terminated the chase because he was gone. And from my standpoint, he was more than a quarter of a mile away. And he had actually crossed near this church that was near Indiana. He said, I was at the crucial moment when the front of the police car is sort of squeezed up against the driver's side of the fleeing suspect. All right. Was there anything in front of the suspect's car that would have impeded its freedom of movement? No. And that's exactly why he took off. He just directly put it in drive and drove straight ahead. I believe the facts also there was nothing to the rear of him either. Nothing to the rear of him either. I mean, they came up from one side. They never really got closer than about 10 feet from the vehicle or whatever. He had never succumbed to their authority. He had not conceded to their authority. He simply put it in drive and then drove away. Under that context, under both cases, you don't have his freedom of movement being directly controlled. And that's why I keep focusing back where the court kept saying, hey, if you take the driver out and you put them in cuffs and the passenger, then you've seized kind of the whole vehicle. I understand that context. If you put somebody in the back of a squad car and they jump over, you've limited their freedom of movement. I understand that context. If somebody's in the back of a car and they jump over trying to get away and the police officer says stop and tries to grab them and they're saying, why are you grabbing at me? They're trying to limit their freedom of movement. And all of those scenarios, you now are an escaping prisoner. It doesn't matter whether they actually grab control of you or not, but you're an escaping prisoner. If what the defense argues here works, then every time a police officer turns on their Mars lights and somebody doesn't feel free to leave, then all of a sudden you're in custody and you're then subject to the immunities and they're absolutely immune from whatever happens. That's just not what the court really intended. And it's not what the Supreme Court said in Reese. It's not what the appellate court in Townsend was saying either. There was the amicus brief talked about, you know, they don't like the decision in Townsend, perhaps overturning Townsend. I don't think the court needs to get to that point in this particular case based on these facts, because Townsend is very specific to where the court found that they were actually grabbing or touching him. They're doing all of that limitation on freedom of movement. The car was curtailed. The car was brought. They put themselves on both sides of the vehicle. He's in the back seat. They're cuffing the driver, cuffing the passenger. We don't have any of that. So we don't even have to get to that. Do we really have to decide the issue of whether he was or was not in custody or are we really merely being called upon to decide the question of whether it can be said as a matter of law that he was in custody? Ultimately, it's a decision of law based on the facts. So it's kind of one of those weird analysis that you have to do. And I think in this case, as a matter of law, can the court say that he was in custody? I would say that's the decision you need to make. And I don't think as a matter of law in these particular facts that you can say the person's in custody. As the court could do in recent Townsend because of those facts, the court could, but not in this particular situation where you don't have that second prong of the test being met. We just don't. And they're really, the defense is stretching, trying to say, let's just follow the Fourth Amendment analysis. And that's why I brought up the recent decision of Torres where the Supreme Court actually clarified that and said that it's not just a show of force. You actually have or control or a show of authority. It's more than that. It's a show of authority with submission. So the U.S. Supreme Court has actually kind of come down on that and actually goes against some of the arguments that they're making here. In the context- You've got a couple of minutes left. Why don't you tell us why you don't think 2-202 applies? Sure. 2-202 is the willful and wanton aspect. And as this court focused on in the Freeman decision, Freeman talked about the various aspect of what happened in that case. And our case is even stronger than Freeman. They were going the wrong way on a one-way street. They terminated 30 seconds before the crash happened. And they went through traffic lights. That was a scenario that only lasted a few minutes. In our particular case, we have 18 minutes. We have officers that are going through red lights, driving on the wrong side of the road. We actually have video of that from two of the officers showing they're on the wrong side of the road. They're going through a residential neighborhood in the morning when people are on their way to work, which Mr. Robinson was doing when he was hit. They're disregarding traffic control devices, stop signs. They're doing this. They're paralleling, driving on the opposite roads, which you're not supposed to do under the rules and regulations. All of that is an issue of fact, an approximate cause in the willful and wanton aspect. And they could determine that it was a approximate cause of the injury in this particular case. You left out they were trapped in excess of 100 miles an hour. I did. I left that out too. I apologize. 90 to 100 miles an hour was the testimony. And the expert that we hired in this case kind of laid out all of the rules and procedures that they violated pretty clearly. Their own rules and regulations about how this chase should have terminated. And it's a balancing test as the court knows of looking out for the public and the public safety. When people are out in the morning, they're just trying to go to work like my client was in this particular case. An approximate cause issue. Do we need to look at each of the officer's conduct? And particularly, do we need to look at it at the time of the injury? Or is it one course of conduct that we look at? I would argue it's one course of conduct. And actually, officer Rinschich, I actually asked him that question in this deposition and he agreed with me that I was the one that initiated this whole thing. I know it was a continuation. And even though he stopped at the point when he switched cars, he said that, no, I was still ongoing with us because any one of these officers could have terminated or put the call in to terminate this chase. Officer Rinschich started it. His superior was officer Garcia. These were the two that were following and going in oncoming traffic and traveling at 100 miles an hour. Officer Hornig was not named individually because he was the third car, just had the video. We did not name him individually, but we named Rinschich who started the chase and was directing the chase and Garcia who was his supervisor. In Sauk Village, officer Vaughn was the one that took over the chase. Once they started, once the switch of the vehicles happened and officer Bogalski was his superior who was paralleling at the time and had the right to stop and terminate the chase. So it's all one course of conduct where any one of these officers could have said, hey, we've got a risk here. We have a risk to the public. We need to terminate this chase. Because they could have terminated it as opposed to the fact that they were all involved in it. They were all chasing him. Yes. At one point or another. And it's one big chase. It is, it is. With the exception of the two, when he stopped in the church parking lot, when he switched stolen vehicles. The only person to be fair and to state the facts, the only person who was not actively still moving a vehicle chasing was officer Rinchich at the final point when my client was hit. But he was simply was out of his vehicle checking on the car that was abandoned before he could get back in his vehicle. The chase hadn't ended. I mean, he was going to continue on and go on to that. So it was all one big chase. That's all it really was. The change in vehicle happened in seconds to where he just jumped out of one vehicle and jumped in another. So it was all really one. Your time is up. Let me ask you to very quickly wrap up and we'll see if there's any other questions from the panel. I think the most important aspect is in this time and in what we're dealing with in our society is limiting the right, the willful and wanton conduct of police officers is not really the direction that the court is going. When we have a situation where we're going to give them blanket immunity in a situation where the court has to determine the strict confines of creating statutory immunities as it relates to the appellees are asking you to expand. And I'm saying, no, let's keep it to where it is. I'm not asking you to even limit it further. Let's keep it where it is. And let's keep people to be responsible for willful and wanton acts. Ultimately for a jury to decide if it is in the case, obviously they can still win a trial. Any other questions from the panel? Thank you. We'll turn it over to Mr. Patrick O'Connor. Somewhere along the line, may please the court. So in Townsend, Ricky Anderson was determined to be in custody when he fled a traffic stop, a run of the mill traffic stop, despite being a backseat passenger, not suspected of any crime and not even spoken to by the police. Whereas in our case, Mr. Coffey is our contention was in custody when he fled the parking lot in Indiana. He was suspected of a crime. He was spoken to by the police. He was ordered out of the car at gunpoint. And he was, at least in my view, he was under control, perhaps not physically as Mr. Lowe was in Reese, but Reese acknowledged that custody can be accomplished by both physical detention or a show of authority. And while we don't have Mr. Coffey placed in a police car, we do have a show of authority that was greater than was demonstrated in either Townsend or in Reese. Can I interrupt you for one minute? The Townsend court seemed to hang its hat on the idea that the positioning of the officers on both sides of the stop vehicle effectively curtailed the passengers freedom of movement. I mean, that was the reasoning in Townsend. If you want me to read you the exact quote, I'll read it to you, but that's what they said. And so in this particular case, in the church parking lot, unlike Townsend, the passenger side of this man's vehicle was not blocked. He was not blocked from the front and he was not blocked from the rear as evidenced by the fact that the only thing he had to do was drop it in gear and drive away. And so this is factually dissimilar from the very fact upon which the Townsend court based their conclusion that this rear seat passenger his freedom of movement was effectively curtailed. The only thing that this guy couldn't do is move his car sideways towards the police car. This is in Townsend. Well, in Townsend, they didn't prevent the Anderson from putting the car in gear and driving off. That's exactly what happened in Townsend. Except for one thing. They said he was in custody from the point in time that the officers positioned themselves on both sides of the vehicle. The exact quote is, police officers would not have, he would not have reasonably felt free to leave the scene of the stop and that the positioning of the officers on both sides of the stop vehicle effectively curtailed the passenger's freedom of movement. So the custody occurred according to the Townsend court is when they stood on both sides of the car. That's what they put their head on. In this case, if he had been surrounded by police cars so he couldn't go backwards, couldn't go forwards and the officers were standing on both doors you'd have Townsend. Right. And I think officer Wrench has justified they couldn't get to the other side of the car because of the curb or something. I don't know if it's clearly shown in the video but I don't believe that Mr. Coffey would have reasonably felt free to leave when you had multiple officers. I don't think your opponent disputes that fact. What he disputes is the other half of the conjunctive phrase and it is in the conjunctive that appears in Reese that his freedom of movement had been directly controlled and limited. I don't think your opponent will dispute the fact that he didn't reasonably think he could leave but the facts failed to establish as a matter of law that his freedom of movement had been controlled and limited directly. Right. And I guess I would take the issue with the fact that Anderson's freedom of movement wasn't curtailed. He was able to get out of the back seat into the front seat and drive off. And so to me, the fact that- Counsel, I don't want to be understood as suggesting I agree with the reasoning of Townsend. Yeah, I mean, I understand- And my position is that it's a logical extension to say that multiple of police officers with guns pointing at you, ordering you out is effectively limiting, curtailing the movement as much as Anderson's was. Maybe no more, but no less. I don't think the fact that they weren't on both sides of the car makes a difference when you're talking about curtailing the freedom of movement. They didn't block Anderson in. They didn't pull him out of the car. They didn't put a vehicle in back, vehicle in front. And so to me, I think that- So I suppose I'm going to ask you the question based on the example that your opponent gave, is every time the police turn on their MARS light to chase a speeder, are they in custody? And if they don't stop, they're escaping? No, I mean, I wouldn't suggest that at all. I mean, I think when you look at 4106, there are really only two cases that have addressed it in anywhere near this context, Rees and Townsend. And so I think if you look at a fact-specific application of it, you wouldn't have that. In Rees, they made the same argument. The 2202 should apply because there was a chase involved in that case and innocent plaintiffs were hurt. And in Townsend, it was the same argument. The 2202 should apply because there was a chase that resulted in a vehicle in which the plaintiff was a passenger being injured. And so 4106 is only going to apply if it's the more specific immunity. According to Rees, that's what Rees said. That's the reason that they overruled Doe is because prior to then, Doe said that you could use 2202's Wilfram Watton exception and other blanket immunities. But if 4106 is the more specific immunity as the court found it was in Rees and the court found it was in Townsend, then that controls, it's not going to be... Rees acknowledged that 2202 is going to apply in most pursuit cases. As Rees said, it's generally been applied in pursuit cases. The distinction that they made in this case is that the injuries to the plaintiff were caused by somebody escaping from custody. In Lowe, he was escaping custody because he hopped into the car that didn't have a divider. He wasn't handcuffed and took off. In Townsend, it was the same. He jumped into the driver's seat and was able to drive off. And in this case, Mr. Coffey drove off despite the fact that there was array of police officers telling him to get out of the car at gunpoint and he didn't do that. And so, I mean, I think that under a fact-specific analysis of it, it's not going to apply in every pursuit case, obviously. But this isn't a typical pursuit case. Somebody is being pursued for bowing a stop sign or whatever it is that pursuits occur as the result of. And so, I think this case actually represents a stronger argument for the application of 4106 than Townsend did and maybe even Rees did. That here, you didn't... The only distinction between Rees is that the suspect was placed in the squad car, but he wasn't handcuffed. He was still able to get into the driver's seat and drive off. There was no indication in Rees that he was seized by gunpoint or by words. He was put into the backseat of the squad car and left alone, unattended. And they still said he was escaping custody. And so, I think in this case, the facts warrant the application of 4106 no less than Rees or Townsend. And in this case, I mean, I think it's conceded by the plaintiff that Ricky Anderson did have his freedom of movement effectively curtailed by two officers approaching on one side, but then argues that multiple police officers on one side with guns drawn, screaming for him to get out of the car did not limit the freedom of movement. And I just don't think that's a valid distinction. In other words, I don't know how Ricky Anderson can be escaping custody. And under these facts, Mr. Coffey was not. So, I understand that they didn't block off potential escape routes. They didn't do that in Rees and they didn't do that in Townsend either. So, I don't know that that is a valid distinction either. Rees didn't talk about that and Townsend didn't talk about that either. Blocking off a potential escape route is adding another predicate. And 4106 is being applied in Rees or in Townsend unfairly, Rees said that the remedy for that is to go and have the General Assembly change it to say that it does mean imprisonment. It does mean physical custody in jail within handcuffs or however they want to word it. But Rees was decided almost 10 years ago and it hasn't been changed. And Townsend was obviously more recent, but it hasn't been changed. And so, when they're talking about custody, they're not talking about physical imprisonment. They're not talking about somebody breaking out of jail necessarily. It can be accomplished by those for sure, but it's the mere power legal or physical of taking manual possession is how Rees talked about it. And I think under Rees that Coffey was escaping custody when he fled the parking lot in the face of multiple police officers screaming for him to get out of his car at gunpoint. So can we say as a matter of law that he was fleeing and eluding till he got to the parking lot, stayed in their parking lot for a matter of seconds and then continued on. He now became an escaping rather than someone who was continuing to flee and elude the police? Well, yeah, I mean, that's an argument, a similar argument was made by the plaintiffs in Rees that they didn't understand why he wouldn't be, why 2202 wouldn't apply in that case. And that's in the context of that is where it came up that if a statute seems to be being applied unjustly or unfairly, they actually quoting Desmet versus County of Rock Island when they said that, but if a statute is being applied unjustly or unfairly or contrary legislative intent, then the remedy is to go to the legislature to have them change that. And so that, because they said that if he wasn't an escaping prisoner, that it was a pursuit and they would be able to recover if they established willful and wanton conduct in the Rees case. That was one of the arguments that the plaintiff was made for the application of 2202 instead of 4106. And the Supreme Court rejected that argument. And so, yeah, I mean, he was, which is why I'm not arguing that when the initial stop, when Richards attempted to make the initial stop and Coffey took off, that he wasn't an escaping prisoner at that point. He was when he stopped in the parking lot and was approached by a police officer. In the video, you can see a police officer with his gun pointing at him, enter the frame before backing off because Mr. Coffey was making troublesome gestures within the vehicle. But so they, at that point, he stopped for whatever reason, plaintiff attributes that to something voluntary. I don't think the circumstances warrant the conclusion that it was a voluntary stop by Mr. Coffey. He stopped and then he confronted the police officers. To me, it appears from the video that he was attempting to goad them into shooting him. In fact, he said multiple times, shoot me, shoot me. And so I don't know that he voluntarily stopped in that parking lot. Mr. Coffey is obviously the only one that could tell us that. And he's, as you know from the record, he was killed later on after running over Mr. Robinson. And so, but yeah, I mean, I agree that that may seem unfair, just like it may have seemed unfair to the plaintiffs and Rees that in a pursuit case that was generally covered by 2202, but because at a certain point, Lowe became an escaping prisoner and Ricky Anderson became an escaping or escaping custody that 4106 is the more specific immunity that applies and governs over 2202. Thanks. Mr. O'Connor, your time is up. Let me ask you to wrap up or defer to Mr. Lapp if he's gonna offer anything else. Oh, I'll defer to Mr. Lapp. No, no, okay. All right. So I will wrap up then judge or Mr. Justice, I'm sorry. Well, based on Rees and Townsend, Markoff was escaping custody when he fled the parking lot in Indiana. I believe that the case represents a better facts for the application of 4106 than either Townsend or perhaps even Rees did. Thank you. Any other questions from the panel? If not, we're back to Mr. Kevin O'Connor for your rebuttal. Sure, just briefly, I just wanna clarify the record that I believe what the officer when he was approaching him in the parking lot said, show us your hands was actually the comment. And then he said, shoot me, shoot me. I don't think there was any other aspect of that going on just to clarify the record. And when we quote Rees, I'm gonna read the, it says, Olivia then placed Lowe in the back of his squad car. Lowe was in custody at this point. He was being detained and his freedom of movement had been directly controlled and limited by Olivia's lawful authority. Moreover, a reasonable person placed in the back of a squad car by a police officer would not feel free to leave. I think Rees was really focusing on this directly control and limiting your freedom of movement. I think that is the most important aspect. And that's why when we get to Townsend, that's why when the court looked at it there, they said he tried to grab at him. He's trying to touch him. He's putting his hands on him. He's actually took the front seat passenger and driver. They surrounded the vehicle. We're talking about a directly controlled freedom of movement, which is the aspect that we need to focus on. And counsel mentioned about, well, they could have changed the statute or whatever. Since the decisions that have come down in both Rees and Townsend, there's been no change in the statute. And it says a prisoner is defined in the statute itself as somebody quote, held in custody, not just in custody, but held in custody. And so they didn't equate it to say, it's just somebody who's seized or changed the wording of that to try and overturn Rees or Townsend. The court, the legislature has left that alone. So the definition of a person who's a prisoner is a person held in custody. So I think that factually, we're not dealing with the same situation. I don't think we need to overturn any of the previous decisions. I just think factually this case is different and would warrant that at least Mr. Robinson gets his chance to have a jury decide whether if it was Wolfram Watt and Conner. Thank you. Any other questions from the panel? If not, the court will take the matter under advisement and I'll direct court staff at this time to remove the attorneys from the Zoom chat room.